IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEO FOSTER,                    )
                               )
        Plaintiff,              )
                               )
    v.                          )    No. 10 C 6009
                               )
JASON E. DAVIS, et al.,         )
                               )
        Defendants.             )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Sergeant Jose Encarnacion's (Encarnacion) and Defendant Lieutenant Clarence Wright's (Wright) motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted.

## BACKGROUND

Plaintiff Leo Foster (Foster) alleges that in 2010, he was incarcerated at Stateville Correctional Center. In early 2010, Foster was allegedly moved into a cell with inmate Jeffrey Bailey (Bailey). Foster claims that Bailey had a history of

1

violence and had been involved in prior altercations with other inmates and cellmates.  Foster claims that on February 16, 2010, and during the morning of February 17, 2010, Bailey was acting strangely and threatening Foster.  Foster believes that Bailey's behavior was the result of his failure to take his prescribed medication.  Foster claims that he repeatedly told Encarnacion and Wright that he did not feel safe and asked to be moved from the cell, and that Encarnacion and Wright ignored his requests.

    According to Foster, around noon on February 17, 2010, Bailey attacked Foster and began biting Foster.  Foster claims that the alleged attack caused a lot of noise and commotion in his cell block and that other inmates were yelling to Defendant Jason Davis (Davis), who was the Gallery Officer assigned to Foster's cell block, to inform Davis of the alleged attack.  Foster claims that Davis walked past Foster's cell during the alleged attack and that, even though the cell was visible to Davis, Davis ignored the alleged attack and continued walking through the cell block.  Davis allegedly walked past the cell a second time during the alleged attack and ignored it again.  Around 12:30 p.m., Davis allegedly came by the cell for a third time and then called for back-up support.  Foster claims that, as a result of the alleged attack, he suffered a partially severed ear and contusions to his nose and right arm.  Foster claims that Defendants were deliberately indifferent to his safety and

welfare. Foster brought the instant action and includes in his amended complaint Eighth Amendment claims brought against Wright, Encarnacion, and Davis pursuant to 42 U.S.C. § 1983 (Section 1983). Wright and Encarnacion (collectively referred to as Moving Defendants) now move for summary judgment. Davis has not moved for summary judgment on the claim brought against him.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable

inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

Moving Defendants contend that Foster, who is serving a sentence for murder, was not the victim of an attack. Moving Defendants argue that Foster was a participant in an altercation with Bailey. Moving Defendants contend that in an investigation conducted after the altercation, Foster was found guilty of fighting. Moving Defendants also point out that although Foster claims he was attacked and bitten by Bailey, Foster admits that he also bit Bailey and threw a television set at Bailey during the altercation. (Foster Dep. 75). Moving Defendants argue, however, that aside from such disputed facts, they cannot be held liable since the undisputed facts show that they were not on notice of a substantial risk of serious harm to Foster and that they did not control the transfer of prisoners between cells.

I.  Notice of Risk of Harm to Foster

Moving Defendants argue that they were not deliberately indifferent to a substantial risk of serious harm to Foster because they lacked notice of the risk of serious harm. For an Eighth Amendment claim, an inmate must establish: (1) "that

4

he suffered an objectively sufficiently serious injury," and (2) that "he was incarcerated under conditions posing a substantial risk of serious harm." *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)(internal quotations omitted)(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A prison official is only liable under Section 1983 "'if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Borello*, 446 F.3d at 747 (quoting *Farmer*, 511 U.S. at 847)(stating that the fact that "the officer had actual knowledge of impending harm can be inferred from circumstantial evidence," and that "[p]roving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior"); *see also Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010)(stating that "[t]he Eighth Amendment's prohibition against cruel and unusual punishment requires that prison officials 'take reasonable measures to guarantee the safety of the inmates'")(quoting *Farmer*, 511 U.S. at 832). In accordance with Eighth Amendment protections, "those charged with the high responsibility of running prisons are required, as a matter of constitutionally imposed duty, to 'protect prisoners from violence at the hands of other prisoners.'" *Santiago*, 599 F.3d at 757 (quoting *Farmer,* 511 U.S. at 833).

Moving Defendants argue that the Eighth Amendment does not require that prison guards perform their duties perfectly when viewed in hindsight. Moving

Defendants argue that the undisputed facts show that Foster never explicitly told Moving Defendants that he feared for his safety or that he wanted to be placed in protective custody. Foster does not contend that he explicitly stated that he feared for his safety or asked to be placed in protective custody. Foster contends that he testified during his deposition that, beginning on the first day that Foster was placed in the cell with Bailey, which was in early 2010, Foster requested each day to be moved out of the cell because Foster "wasn't comfortable" being in the cell with Bailey. (SAF Par. 6); (Foster Dep. 28-31). Foster contends that he told Wright on one occasion: "you moved me in the cell with this crazy dude, move me." (R SF Par. 4); (Foster Dep. 29). Foster also claims he told Encarnacion just prior to the alleged attack: "This crazy ----- ain't took his medication, you still got me in the cell with this dude, move me." (Foster Dep. 61). Moving Defendants contend that they do not recall Foster making a request to transfer cells. (R SAF Par. 6). However, even putting aside that factual dispute and accepting Foster's claims that he made such statements to Moving Defendants, Moving Defendants contend that they were not placed on notice of a substantial risk of serious harm to Foster.

Even if Foster indicated to Moving Defendants that he had a subjective fear for his safety, that did not mean that there was a credible risk to Foster's safety. In *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004), the Seventh Circuit recognized

that "[s]ome prisoners are manipulative and cry 'wolf' in an effort to have a cell to themselves or choose a favored cellmate" and "[o]ther prisoners perceive specters in every shadow, even though their fears are unsupported." *Id.* at 525. The Seventh Circuit explained that "[a]ll that can be expected is that guards act responsibly under the circumstances that confront them," and that "[g]uards therefore must discriminate between serious risks of harm and feigned or imagined ones, which is not an easy task given the brief time and scant information available to make each of the many decisions that fill every day's work." *Id.*

There is no evidence in this case that Foster related to Moving Defendants any specific observations that would indicate that his fears were well-founded. Foster claimed that his cellmate was "crazy," a "nut," and was "unstable," and Foster relayed such opinions to Moving Defendants. (Foster Dep. 22, 25, 26). However, Foster has not shown that he has any professional training in the mental health field. It is undisputed that the mental health of prisoners was evaluated prior to placement in cells. (R SF Par. 6). Thus, Moving Defendants could reasonably have discounted a claim by a prisoner that his cellmate was mentally disturbed and was dangerous, absent some tangible details to raise a reasonable question on that issue.

Foster also claims that he told Moving Defendants that Bailey did not take his medication. However, Foster does not point to evidence showing that he had

7

tangible details to show that he actually knew that Bailey failed to take his medication. The record reflects that Foster was merely engaging in speculation. In addition, Foster has not shown that he has any professional training in medicine, and Foster admits that he does not even know what medication Bailey was taking at the time in question. (Foster Dep. 19, 23). Foster's speculation that Bailey may not have taken his medication and that Bailey would become violent if he did not take the medication did not provide Moving Defendants with notice that there was a credible threat to Foster's safety.

Foster also contends that he has presented evidence that he observed Bailey acting in a threatening manner in the cell. However, even if Foster observed such conduct by Bailey in the cell, Foster did not testify at his deposition that he ever relayed such details to Moving Defendants. (Foster Dep. 27-29, 61). Foster also claims that Bailey had previously been in fights with other inmates and was a violent person. However, Foster indicates that his only source of such information was rumors from other inmates. (Foster Dep. 23-26). In addition, Foster has not presented evidence showing that he even informed Moving Defendants of the rumors that he had heard concerning Bailey. Also, Foster has not pointed to evidence of any official records documenting prior violent acts by Bailey that made him a threat to other inmates, nor has Foster shown that Moving Defendants were aware of any such records.

8

Foster claims that day after day he asked to be moved out of his cell and that day after day no physical altercation occurred between Foster and Bailey. Foster does not indicate that during his frequent requests to transfer to another cell he ever provided any specific details to show that he was in any real imminent danger. Also, during the many times that Foster claims he asked to be transferred to another cell, Foster could have specifically requested to be placed in protective custody and he would have been immediately removed from his cell. (R SF Par. 8). Yet, Foster admits that he never made such a request even though he had many opportunities to do so. (R SF Par. 11). Although the undisputed facts show that some altercation ultimately occurred between Foster and Bailey and that both were injured, there is no evidence upon which a reasonable trier of fact could conclude that Moving Defendants were aware of a credible substantial risk of serious harm to Foster prior to the altercation. Based on the above, Moving Defendants' motion for summary judgment is granted.

Moving Defendants also argue that some of Foster's filings made pursuant to Local Rule 56.1 should be stricken. Moving Defendants argue that Foster misrepresents the record in certain portions of such filings. The objections presented by Moving Defendants do not impact the analysis in the above opinion, and therefore the motion to strike is stricken as moot.

## CONCLUSION

Based on the foregoing analysis, Moving Defendants' motion for summary judgment is granted and the motion to strike is stricken as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:	January 10, 2013